IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRIN DUNSTON,

       Plaintiff,                 No. 2:12-cv-0650-KJN

      v.

COMMISSIONER OF,
SOCIAL SECURITY,

       Defendant.             <u>ORDER</u>
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from September 30, 2005, the alleged disability onset date, through the date of the final administrative decision.  (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 18.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 20.)  For the reasons

---

[1] This case was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and thereafter both parties voluntarily consented to proceed before a United States Magistrate Judge.  (ECF Nos. 9, 11.)

that follow, the court grants plaintiff's motion for summary judgment in part, denies the

Commissioner's cross-motion for summary judgment, remands the action for further proceedings

under sentence four of 42 U.S.C. § 405(g), and enters judgment for plaintiff.

I.    BACKGROUND

Plaintiff was born on July 26, 1963, has a limited eleventh grade education, is able

to communicate in English, and previously worked in various positions in the construction

industry.[2]  (Administrative Transcript ("AT") 25, 53, 75-78.)  On July 10, 2006, plaintiff applied

for DIB and SSI, alleging that he was unable to work as of September 30, 2005, due to a heart

condition, spinal condition, fainting spells, arthritis, bilateral rotor cuff surgery, heat exhaustion,

high and low blood pressure, seizures, and depression.  (AT 14, 75-78, 161.)  On March 29,

2007, the Commissioner determined that plaintiff was not disabled.  (AT 14, 79-83.)  Upon

plaintiff's request for reconsideration, the determination was affirmed on July 23, 2007.  (AT 14,

88-94.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"),

which took place on December 10, 2009.  (AT 14, 47-71.)

In a decision dated May 13, 2010, the ALJ determined that plaintiff had not been

under a disability, as defined in the Act, from September 30, 2005, through the date of that

decision.  (AT 14-26.)  The ALJ's decision became the final decision of the Commissioner when

the Appeals Council denied plaintiff's request for review on January 20, 2012.  (AT 1-6.)

Thereafter, plaintiff filed this action in federal district court on March 14, 2012, to obtain judicial

review of the Commissioner's final decision.  (ECF No. 1.)

II.    ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ erred in not finding

plaintiff's shoulder impairments to be severe at step two of the sequential evaluation process; (2)

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1   whether the ALJ improperly weighed the medical opinion evidence; (3) whether the ALJ

2   improperly discounted plaintiff's credibility and subjective complaints; and (4) whether the ALJ

3   erred in failing to obtain testimony by a vocational expert.[3]

4   III.    LEGAL STANDARD

5           The court reviews the Commissioner's decision to determine whether (1) it is

6   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

7   the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

8   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

9   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

10  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

11  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

12  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

13  resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation

14  omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

15  than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

16  IV.    DISCUSSION

17         A.    Summary of the ALJ's Findings

18             The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the

19  Commissioner's standard five-step analytical framework.[4]  As an initial matter, the ALJ found

20

21         [3]  In his motion, plaintiff also generally contends that the ALJ's residual functional
    capacity determination, the ALJ's determination that plaintiff could perform work existing in
22  significant numbers in the national economy, and the ALJ's determination that plaintiff was not
    disabled were erroneous.  However, these more general, overarching issues are all derived from
23  the more specific issues listed above, and thus do not warrant any additional discussion.

24         [4]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to
25  disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability,
    in part, as an "inability to engage in any substantial gainful activity" due to "a medically
26  determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).

3

1    that plaintiff met the insured status requirements for purposes of DIB through December 31,

2    2010.  (AT 16.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial

3    gainful activity since September 30, 2005, plaintiff's alleged disability onset date.  (Id.)  At step

4    two, the ALJ determined that plaintiff had the following severe impairments: chronic lumbar

5    degenerative disc changes predominantly at L4-5, degenerative right hip osteoarthritis, chronic

6    low back pain, and adjustment disorder with anxiety and depressed mood.  (Id.)  However, at step

7    three, the ALJ determined that plaintiff did not have an impairment or combination of

8    impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

9    Appendix 1.  (Id.)

10          Before proceeding to step four, the ALJ assessed plaintiff's residual functional

11   capacity ("RFC"), finding that plaintiff was capable of performing sedentary work with

12   additional limitations to simple repetitive tasks and limited public contact.  (AT 18.)  At step

13   _____

14   A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
     See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
     137, 140-42, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

15

16          Step one:  Is the claimant engaging in substantial gainful
     activity?  If so, the claimant is found not disabled.  If not, proceed
     to step two.

17          Step two:  Does the claimant have a "severe" impairment?
     If so, proceed to step three.  If not, then a finding of not disabled is
18   appropriate.

19          Step three:  Does the claimant's impairment or combination
     of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
     404, Subpt. P, App.1?  If so, the claimant is automatically
20   determined disabled.  If not, proceed to step four.

21          Step four:  Is the claimant capable of performing his past
     work?  If so, the claimant is not disabled.  If not, proceed to step
     five.

22          Step five:  Does the claimant have the residual functional
     capacity to perform any other work?  If so, the claimant is not
23   disabled.  If not, the claimant is disabled.

24   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25          The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
26   burden if the sequential evaluation process proceeds to step five.  Id.

1    four, the ALJ found that plaintiff was unable to perform any past relevant work.  (AT 25.)

2    Finally, at step five, the ALJ determined, in reliance on the "Grids" (see 20 C.F.R. Part 404,

3    Subpart P, Appendix 2), that, considering plaintiff's age, education, work experience, and RFC,

4    there were jobs that existed in significant numbers in the national economy that plaintiff could

5    perform.  (Id.)

6            Accordingly, the ALJ concluded that plaintiff had not been under a disability, as

7    defined in the Act, from September 30, 2005, through the date of the ALJ's decision.  (AT 26.)

8        B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

9             1.    Whether the ALJ erred in not finding plaintiff's shoulder impairments to

10                 be severe at step two of the sequential evaluation process

11           Under the Commissioner's regulations, an impairment or combination of

12   impairments is deemed to be severe at step two if it "significantly limits your physical or mental

13   ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  As the Ninth Circuit

14   Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to

15   dispose of groundless claims.  An impairment or combination of impairments can be found not

16   severe only if the evidence establishes a slight abnormality that has no more than a minimal

17   effect on an individual's ability to work."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)

18   (internal citations and quotation marks omitted).

19           In this case, the ALJ provided no meaningful explanation as to why he found that

20   plaintiff's shoulder impairments had no more than a minimal effect on plaintiff's ability to work.

21   Although the Commissioner argues that plaintiff has offered no objective evidence regarding

22   shoulder impairments apart from his subjective complaints, there are numerous references to

23   plaintiff's prior rotator cuff surgeries in the medical records.  (See, e.g., AT 267-70, 278, 321-24,

24   367, 413-14.)  Even though consultative examiner Dr. R. Kelley Otani, to whose opinion the ALJ

25   gave great weight (as discussed below), did not formally diagnose a shoulder impairment, he

26   specifically found that plaintiff had limited range of motion in his shoulders.  (AT 414-15.)

5

1    Furthermore, consultative examiner Dr. Mustafa Ammar noted significant pain in both of

2    plaintiff's shoulders with range of motion testing, and actually limited the amount of weight

3    plaintiff could lift and carry in part based on plaintiff's shoulder pain.  (AT 269-70.)[5]

4            However, even if the ALJ technically erred at step two by not finding plaintiff's

5    shoulder impairments to be severe, such error may nonetheless be harmless if the ALJ proceeded

6    to consider the effects of that impairment at subsequent steps.  See Lewis v. Astrue, 498 F.3d

7    909, 911 (9th Cir. 2007).  Because the court concludes, for the reasons discussed below, that the

8    ALJ's evaluation of the medical opinion evidence was not supported by substantial evidence and

9    that remand for further proceedings is required on that basis, it is unnecessary to definitively

10   determine at this juncture whether plaintiff's shoulder impairments were appropriately

11   considered in the sequential evaluation process.  On remand, the ALJ will have an opportunity to

12   perform a proper step two analysis with respect to plaintiff's shoulder impairments and consider

13   any limitations relating to such impairments at subsequent steps, as appropriate.

14           2.    Whether the ALJ improperly weighed the medical opinion evidence

15           Plaintiff primarily contends that the ALJ improperly relied on the opinions of the

16   consultative examining physicians to reject the opinion of plaintiff's treating physician, Dr.

17   David McKinney, with respect to plaintiff's physical limitations.[6]

18           The weight given to medical opinions depends in part on whether they are

19   proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari,

20   246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

21

22           [5] The Commissioner argues that pain itself is not a medically determinable impairment,
     but instead a symptom.  Although that may strictly be the case, plaintiff's shoulder pain is
23   logically attributable to some shoulder impairment(s), possibly, as Dr. Ammar diagnosed, a
     condition of "bilateral shoulder pain status post surgical repair for rotator cuff injury."  (AT 270.)
24   If the ALJ did not find that diagnosis to be sufficient, he should have explained why and further
     developed the record as necessary.
25
             [6] Plaintiff does not dispute the ALJ's findings with respect to the mental component of
26   his RFC.

1    Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

2    opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d

3    1273, 1285 (9th Cir. 1996).

4            To evaluate whether an ALJ properly rejected a medical opinion, in addition to

5    considering its source, the court considers whether (1) contradictory opinions are in the record;

6    and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

7    treating or examining medical professional only for "clear and convincing" reasons.  Lester,

8    81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional

9    may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

10   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

11   examining professional's opinion (supported by different independent clinical findings), the ALJ

12   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

13   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

14   weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[7] except that the ALJ

15   in any event need not give it any weight if it is conclusory and supported by minimal clinical

16   findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

17   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

18   non-examining professional, without other evidence, is insufficient to reject the opinion of a

19   treating or examining professional.  Lester, 81 F.3d at 831.

20           In this case, on December 17, 2006, plaintiff underwent a consultative

21   examination by board certified internal medicine specialist, Dr. Mustafa Ammar, who did not

22   review plaintiff's prior treatment records.  (AT 267-70.)  Plaintiff chief complaints were noted to

23   be back pain, shoulder pain, and right hip pain, and plaintiff also described a history of fainting

24

25       [7] The factors include: (1) length of the treatment relationship; (2) frequency of
     examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26   (5) consistency; (6) specialization.  20 C.F.R. § 404.1527.

1   episodes with heat, a heart attack, and a mild stroke resulting in residual problems with memory,

2   focus, and concentration.  (AT 267.)  Plaintiff stated that he could not do anything at home and

3   mostly watched television.  (Id.)  He further stated that he did not have a primary care physician,

4   was not taking any medications, but took over-the-counter pain medications "[e]very now and

5   then."  (AT 268.)  Upon a physical examination, Dr. Ammar observed that plaintiff had a normal

6   gait, did not have problems taking off and putting on his shoes, and did not use an assistive

7   device.  (AT 268-69.)  Motor strength, sensation, and reflexes were found to be normal in all

8   extremities; a straight leg raising test rendered a normal result; and there were no muscle spasms

9   or atrophy.  (Id.)  Dr. Ammar did note significant pain in both shoulders with range of motion

10  testing, as well as decreased range of motion of the lumbar spine and hip joints.  (AT 269.)

11          Dr. Ammar diagnosed plaintiff with a history of degenerative disease of the lower

12  back with back pain; a history of bilateral shoulder pain status post surgical repair for rotator cuff

13  injury; a history of right hip pain; and a history of mild heart attack and mild stroke with memory

14  problems.  (AT 270.)  He opined that plaintiff could stand and walk for about 6 hours in an 8-

15  hour workday (with more frequent breaks due to low back and right hip pain); sit for 6 hours in

16  an 8-hour workday; lift and carry 20 pounds frequently and occasionally due to low back and

17  shoulder pain; only occasionally bend, stoop, and crouch; and that plaintiff did not need an

18  assistive device.  (Id.)

19          On October 19, 2007, Dr. David McKinney completed a treating source statement

20  and RFC evaluation form.  (AT 321-24.)  Based on a physical examination of plaintiff, a review

21  of plaintiff's medical records, and plaintiff's surgical history, Dr. McKinney diagnosed plaintiff

22  with lumbar stenosis and radiculopathy, coronary heart disease, bipolar disorder, and bilateral

23  rotator cuff repair with chronic shoulder impingement, noting that plaintiff experienced

24  symptoms of daily lumbar pain and pain with any overhead lifting.  (AT 321.)  He rated

25  plaintiff's pain as 7 or 8 out of 10 chronically, and 9 to 10 out of 10 at worst, noting that

26  plaintiff's pain complaints were credible and that plaintiff was at that time treated with

8

1  medication, including 4-6 Vicodins per day, and lumbar spine epidural injections.  (AT 324.)

2          Dr. McKinney opined that plaintiff could occasionally lift 6-10 pounds to his

3  chest and rarely lift 6-10 pounds overhead; rarely lift overhead with either hand/arm; stand/walk

4  for 10-15 minutes at a time for 4-5 times a day; sit for 15 minutes at a time for a total of 8 hours

5  in a day; and occasionally bend, but never climb, balance, stoop, crouch, crawl, or kneel.  (AT

6  322-23.)  In support of his assessment, Dr. McKinney relied on his physical examination,

7  findings of nerve impingement of L3 and moderate to severe canal stenosis at L4-L5 as shown by

8  a May 11, 2007 CT scan of the lumbar spine, findings of bilateral degenerative hip arthritis, and

9  plaintiff's prior two rotator cuff repair surgeries.  (Id.)  Dr. McKinney also stated that plaintiff

10  would have environmental restrictions with respect to heights, moving machinery, and humidity.

11  (AT 323.)  He opined that plaintiff's back pain would likely worsen.  (AT 324.)

12          Finally, on March 25, 2010, plaintiff was evaluated for his orthopedic concerns by

13  Dr. R. Kelley Otani, a diplomate of the American Board of Physical Medicine and Rehabilitation.

14  (AT 413-15.)  Dr. Otani reviewed some of plaintiff's prior records, including Dr. Ammar's

15  December 17, 2006 assessment; x-rays taken on April 13, 2007; and certain treatment notes from

16  2009.  (AT 414.)  Plaintiff reported that he was independent in terms of mobility and activities of

17  daily living, but that he used a right-handed single point cane for long distances.  (AT 413.)

18  Upon physical examination, Dr. Otani found decreased lumbar lordosis, increased pain and

19  sensitivity with axial loading and palpation of plaintiff's lumbar spine, and limited range of

20  motion in plaintiff's shoulders and hips.  (AT 414.)  A straight leg raise test was positive on the

21  right to 10 degrees and the left to 30 degrees, but plaintiff was able to "long sit" when distracted.

22  (Id.)  Plaintiff's tone, strength, nerves, touch, sensation, and reflexes were normal.  (Id.)  Dr.

23  Otani observed that plaintiff had a slight antalgic gait, but was able to heel/toe/tandem walk, get

24  up out of a chair and onto the examination table without difficulty, dress and undress without

25  difficulty, and ambulate without any assistive devices.  (Id.)

26  ////

9

Dr. Otani diagnosed plaintiff with low back pain with degenerative disk disease (as shown by the x-rays); degenerative osteoarthritis in the hips, bipolar disorder, hypercholesteromia, and bilateral rotator cuff surgery (with the right shoulder in 1997 and the left shoulder in 2003).  (AT 414-15.)  He noted that plaintiff did not have focal neurologic findings or evidence of a radicular component with regards to his pain symptomatology, and observed that there were non-physiologic inconsistencies in the physical examination, with subjective complaints that appeared to be greater than the objective findings.  (AT 415.)  Dr. Otani opined that plaintiff could sit for 1 hour at a time for a total of 6 hours in an 8-hour day; stand for 45 minutes at a time for a total of 2 hours in an 8-hour day; and lift/carry 20 pounds occasionally and 10 pounds frequently.  (Id.)

The ALJ, in according minimal weight to treating physician Dr. McKinney's opinion, primarily relied on the opinions of the consultative examiners, and in particular the opinion of Dr. Otani.  (AT 24.)  Because Dr. Otani and Dr. Ammar both personally examined plaintiff and conducted thorough evaluations based on their examinations, resulting in independent clinical findings, their opinions would ordinarily constitute substantial evidence.  Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751).  The court also agrees, at least in part, that Dr. McKinney's severe limitations are not always fully supported by his examination findings.  (AT 24.)  Indeed, although Dr. McKinney assessed detailed restrictions, his assessment included little detail regarding the scope and findings of his physical examination.  (AT 321-24.)  Additionally, even though Dr. McKinney represented that he was plaintiff's treating physician, it appears that his assessment was actually based on a one-time evaluation of plaintiff.  (AT 64-65, 321.)  Given its brief and limited nature, Dr. McKinney's treatment relationship with plaintiff was therefore more comparable to that of a consultative examining physician.

Nevertheless, the court finds that the opinions of Dr. Otani and Dr. Ammar here cannot qualify as substantial evidence to support the ALJ's assessment of plaintiff's functional limitations, because these examiners did not have access to all of plaintiff's pertinent medical

10

1   records, and in particular, the May 11, 2007 CT scan of plaintiff's lumbar spine on which Dr.

2   McKinley heavily relied in his assessment.  Unlike the April 13, 2007 x-rays and a December 10,

3   2007 lumbar spine MRI, which were reviewed by Dr. Otani and contained mostly mild to

4   moderate findings, the May 11, 2007 CT scan of plaintiff's lumbar spine contained more severe

5   findings.  (AT 304-05, 397, 414.)  In particular, that CT scan contained the following impression:

> Abnormalities at several sites as per above.  Primary abnormality is
> possible far lateral impingement of the left third root and fairly
> striking 4-5 canal stenosis.  There may be similar far lateral
> impingement of the exited fourth root.  I reviewed the study on a
> GE workstation, and images parallel to the vertebral end plates
> suggest there may be far lateral impingement of the exited right
> fourth root as well by broad-based end-plate change.  The 4-5 canal
> stenosis, again, moderately severe.

11  (AT 304.)

12          The regulations require that a consultative examiner be given any necessary

13  background information about the plaintiff's condition.  20 C.F.R. § 404.1517.  Background

14  information is essential because consultative exams are used to try to resolve inconsistencies or

15  ambiguities in the evidence.  20 C.F.R. § 404.1519a(b).  An opinion on a documented medical

16  problem given after only a one-shot examination, without recourse to the plaintiff's available

17  medical records, is not one which can generally be relied upon.  This conclusion is especially true

18  when the medical records contain results from important objective tests, such as the above-

19  mentioned CT scan, which the treating physician used to support his opinion.

20          Although the May 11, 2007 CT scan was only performed after Dr. Ammar

21  examined plaintiff on December 17, 2006, there is no indication that the CT scan results were

22  somehow unavailable at the time of Dr. Otani's examination on March 25, 2010.  The May 11,

23  2007 CT scan results, on which Dr. McKinney heavily relied in his assessment, were more severe

24  than the other objective test results on which Dr. Otani relied, suggesting, for example, that there

25  may be possible impingement of nerve roots.  Dr. Otani and Dr. Ammar did not have access to

26  the May 11, 2007 CT scan results, and it is unclear how these examiners would have weighed the

1 | potentially conflicting objective test results.  Importantly, the court cannot independently

2 | determine whether and/or how review of those results would have changed Dr. Otani's and Dr.

3 | Ammar's opinions, if at all, with respect to plaintiff's functional limitations.

4 |       Accordingly, remand for a consultative evaluation by an examining orthopedic

5 | specialist, or other appropriate health professional, *with full access to plaintiff's prior treatment*

6 | *records and objective test results*, is necessary to adjudicate plaintiff's claims.  Depending on the

7 | results of the consultative examination, the ALJ may also consider conducting a supplemental

8 | hearing with vocational expert testimony regarding any limitations found, if necessary.[8]

9 |       Plaintiff requests that the case be remanded for payment of benefits.  However, an

10 | award of benefits is only appropriate where "no useful purpose would be served by further

11 | administrative proceedings," "the record has been thoroughly developed," and "there are no

12 | outstanding issues that must be resolved before a proper disability determination can be made."

13 | Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399, 1401 (9th Cir. 1988).  Here,

14 | given the ambiguities and inconsistencies in the medical opinion evidence and objective test

15 | results, as discussed above, it is far from clear that plaintiff is in fact disabled.  Portions of the

16 | record suggest that plaintiff's impairments may be satisfactorily controlled with medication.  For

17 | example, on August 13, 2009, plaintiff apparently informed Dr. Jerry Waters, one of his treating

18 | physicians who did not submit a functional assessment, that he was "at least 80% better" and that

19 | his pain level was "very tolerable."  (AT 351.)  Treatment records from another treating

20 | physician, Dr. Htun Zaw Oo, between July and October 2009 likewise state that plaintiff's back

21 | pain was controlled with medication, that he had a nonantalgic gait, and indicate that he often did

22 | not use an assistive device during his appointments.  (AT 374, 379, 381-82.)  As the ALJ noted,

23 |

24 |     [8] Plaintiff also correctly observes that, although the ALJ gave Dr. Otani's opinion great weight, the ALJ did not explain why he did not adopt all of Dr. Otani's suggested limitations,

25 | including, for example, that plaintiff could only sit for one hour at a time.  (AT 415.)  If the ALJ elects not to adopt certain pertinent limitations suggested by an otherwise credited medical

26 | source, the ALJ must provide specific and legitimate reasons in any future decision.

there were also gaps in plaintiff's treatment during the alleged disability period.  (AT 23.)

Therefore, the court finds that the better course of action is to remand the case for further proceedings as outlined above.  Indeed, the court expresses no opinion regarding the weight ultimately to be given to any particular evidence on remand, and leaves it to the sound discretion of the ALJ to evaluate the record as a whole within the confines of the applicable law.

### 3.    Other Issues

In light of the court's conclusion that the case should be remanded for further development of the medical opinion evidence, the court declines to address plaintiff's remaining issues regarding plaintiff's credibility and vocational expert testimony at this time.  Upon remand, the ALJ will have an opportunity to consider whether his analysis regarding plaintiff's credibility should or should not be revised in light of further development of the record, and whether vocational expert testimony is appropriate, subjects on which the court expresses no opinion here.

## V.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED IN PART.

2.   The Commissioner's cross-motion for summary judgment (ECF No. 18) is DENIED.

3.   The action is REMANDED for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4.   Judgment is entered for plaintiff.

////

////

////

////

13

1          5.  The Clerk of Court is directed to close this case and vacate all dates.

2          IT IS SO ORDERED.

3   DATED:  June 11, 2013

4                                        _____
                                         KENDALL J. NEWMAN
5                                        UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

14